## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

**In the Matter of:**                                    **Case No.:**
**AUMOND GLEN, LLC**                              **08-04294-8-JRL**
      **Debtor**                                        **Chapter 11**


## PLAN OF LIQUIDATION
September 25, 2008


TRAWICK H. STUBBS, JR.
N.C. State Bar No. 4221

LAURIE B. BIGGS
N.C. State Bar No. 31845

STUBBS & PERDUE, P.A.
Attorneys for Debtor
P.O. Box 1654
New Bern, NC  28563
(252) 633-2700

TABLE OF CONTENTS

I.      Summary of Plan
        A.      Eastwood Contract
        B.      Other Contracts

II.     Definitions

III.    Classification and Treatment of Classes of Creditors
        Class 1 – Administrative Claims
        Class 2 - Ad Valorem Taxes
        Class 3 – Tax Claims
        Class 4 -  SunTrust Bank
        Class 5 – TIC Owners
        Class 6- Eastwood Construction Co., Inc.
        Class 7 - Hoopaugh Grading Co.
        Class 8- Southern Pools & Spas
        Class 9 – Landcraft Management, LLC
        Class 10– General Unsecured Creditors
        Class 11 – Equity Security Holders

IV.     Perfection and Enforcement of Mechanic's Liens

V.      Means of Execution and Distribution of Sales Proceeds
        A.      Sale Free and Clear of Liens
        B.      Distribution of Sales Proceeds
        C.      Disbursements by Committee Disbursing Agent
        D.      Delivery of Disbursements in General
        E.      De Minimis Distributions
        F.      Timing of Distributions
        G.      Unclaimed Distributions
        H.      Reserve for Disputed Claims
        I.      Deadlines for Post-Confirmation Actions

VI.     Preservation of Section 506(c) Claims

VII.    Preservation of Claims and Avoidance of Actions

VIII.   Similar Treatment for Each Claim Within a Class

IX.     Rejection of Executory Contracts and Leases

X.      Post Confirmation Action and Releases
        A.      Adversary Proceedings
        B.      Injunction Against Separate Actions by Class 5 Claimants
        C.      Releases

XI      Exculpation

      A.      Debtor and Debtor's Agents
      B.      Committee Disbursing Agent
      C.      Committee Members and Professionals Employed by Committee

XII      Effect of Confirmation
      A.      Vesting of Property
      B.      Injunction

XIII.    Acceptance or Rejection of Plan; Effect of Rejection by an Impaired Class

      A.      Each Impaired Class Entitled to Vote Separately
      B.      Acceptance by a Class of Creditors
      C.      Claimants Entitled to Vote
      D.      Confirmation Hearing
      E.      Acceptances Necessary to Confirm the Plan
      F.      Confirmation of Plan Without Necessary Acceptances

XIV.    "Cramdown" for Impaired Creditors Not Accepting the Plan

XV.     Retention of Jurisdiction

XVI.    Miscellaneous Provisions

      A.      Survival of Terms
      B.      Successors Bound
      C.      Controlling Law
      D.      Further Assurance
      E.      Liens
      F.      Continuation of Committee

      Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| | |
|---|---|
| In the Matter of: | Case No.: |
| **AUMOND GLEN, LLC** | **08-04294-8-JRL** |
| Debtor | Chapter 11 |

## PLAN OF LIQUIDATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor, Aumond Glen, LLC, hereby submits the following Plan of Liquidation:

## I.  SUMMARY OF PLAN

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN AND THE TREATMENT OF CREDITORS UNDER THE PLAN. THE FOLLOWING IS A SUMMARY ONLY. CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION CONTAINED IN THE PLAN AND THIS DISCLOSURE STATEMENT.

THE PLAN CONTEMPLATES A LIQUIDATION OF CERTAIN PROPERTY.  IN ACCORDANCE WITH THE PLAN, THE DEBTOR INTENDS TO SATISFY CREDITOR CLAIMS WITH THE SALE OF PROPERTY OR AS OUTLINED HEREIN.

The Debtor's Plan is based on the Debtor's belief that the interests of its creditors will be best served if it is allowed to complete development of the Aumond Glen subdivision and sell lots to third party builders, in order to satisfy the claims of its creditors.

The Debtor's Plan proposes a sale of certain lots located in the Aumond Glen subdivision over a period of approximately three and one half years.  All proceeds of liquidation will be distributed in accordance with the priorities of the Code and as described more fully in Section V of the Plan.  By way of summary, sales proceeds remaining after the payment of all costs of sale will be paid from the closing proceeds to creditors with liens upon such collateral, at the release prices set forth in Section V.  The particular method for payment of each creditor is outlined in Section III and Section V of the Plan.

The Committee (or in the event the Committee declines, the Debtor) shall, at its discretion, pursue causes of action against various third parties including, but not limited to Bankruptcy Causes of Action.  Such causes of action may also be a basis for disallowance of claims of the creditors. The Debtor's Schedules contain a list of all such transferees known to the Debtor at the time it was prepared.

Except as otherwise provided for in the Plan or Orders of the Court, each executory contract or lease not assumed herein shall be deemed rejected by the Debtor on the Effective Date.  Parties to executory contracts may file a proof of claim for rejection damages as provided in Section IX of the Plan.

A.    Eastwood Contract

The Debtor has a contract with Eastwood Construction Co., Inc. ("Eastwood") whereby Eastwood is to purchase lots from the Debtor. The contract calls for Eastwood to purchase a total of 309 lots from the Debtor, in quarterly increments of 20 lots per quarter. The purchase prices per lot are $43,900.00, $39,900.00 and $28,900.00 depending on the size of the lot, and the contract purchase prices will increase at a rate of 1.5% per quarter, after initial lot takedown. Thus far, Eastwood has taken down 30 55-foot lots, 31 70-foot lots and 30 20-foot lots.

The Debtor does have the right to sue Eastwood for specific performance should Eastwood fail to purchase the first 116 lots under the contract. Eastwood has provided the Debtor with a cash deposit and a letter of credit to secure its remaining performance under the contract. The letter of credit has been assigned to SunTrust Bank as additional collateral for its loan to the Debtor. In the event Eastwood defaults on the contract, the Debtor is entitled to draw upon the letter to credit as its only source of damages for the non-specific performance lots.

The Debtor has filed a motion to assume this contract.

B.    Other Contracts

In the event Eastwood fails to purchase all of the lots under its contract, the Debtor will sell the remaining lots to other local, regional, or national builders.

## II.  DEFINITIONS

1.   "ADMINISTRATIVE CLAIM BAR DATE" shall mean the date fixed by the Court as the last date for filing Administrative Expense Claims, as set forth in Section III.A.; provided however, that the Administrative Claims Bar Date shall not apply to claims by professionals or other persons requesting compensation pursuant to Sections 327, 328, 330, 503(b) 506(c), or 1103 of the Code.

2.   "BANKRUPTCY CAUSES OF ACTION" shall mean any claim or cause of action which may be asserted by a trustee or a debtor-in-possession under Sections 541, 542, 543, 544, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

3.   "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title ll of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

4.   "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

5.   "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

6.   "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

4

7.  "COMMITTEE" shall mean the duly appointed official Committee of Noteholders and TIC Owners appointed in this case and the cases of the Debtor Affiliates.

8.  "COMMITTEE DISBURSING AGENT" shall mean John Northen, attorney for the Committee, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

9.  "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

10. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

11. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

12. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

13. "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

14. "DEBTOR" shall mean Aumond Glen, LLC.

15. "DEBTOR AFFILIATES" shall mean the debtors in the cases filed for Eagles Trace, LLC, Eagle Creek Subdivision, LLC, Back Creek Subdivision, LLC, Saddlebrook Subdivision, LLC, Chandler Oaks, LLC, Water Mill, LLC, The Heights Subdivision, LLC, River Chase Subdivision, LLC, Myers Mill, LLC, Kelsey Glen, LLC, and The Rapids at Belmeade, LLC, together with such other debtor or non-debtor entities which are determined by the Bankruptcy Court to be affiliates of the Debtor for purposes of the Plan.

16. "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

17. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

18. "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

19. "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

20. "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim.

21. "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

22. "LANDCRAFT" shall mean Landcraft Management, LLC.

23. "LANDCRAFT AFFILIATES" shall mean any affiliates of Landcraft, other than the Debtor Affiliates.

24. "LANDCRAFT PRINCIPALS" shall mean the members and managers of Landcraft.

25. "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, June 27, 2008.

26. "PLAN" shall mean this Plan of Liquidation in its present form or as it may be amended or modified.

27. "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

28. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

29. "REORGANIZED DEBTOR" shall mean the Debtor upon Substantial Consummation of the Plan.

30. "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

31. "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to one or more creditor classes.

32. "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

33. "TRUE UP PAYMENTS" shall mean any amount due to or from the Debtor and any Debtor Affiliate, as determined by the Bankruptcy Court after notice and hearing.

34. "UNCLAIMED DISTRIBUTIONS" shall mean any distributions of cash or other property

made to holders of allowed claims that is (a) returned to the Committee Disbursing Agent as undeliverable and no appropriate forward address is received within 60 days of delivery; (b) returned to the Committee Disbursing Agent by the holder of the allowed claim for any reasons; or (c) for disbursements made in the form of a check, such check is not negotiated within 90 days and no request for a re-issuance is made during such time period.

### III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CREDITORS

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

**A.    Class 1 – Administrative Claims:**

(1)    <u>Classification</u>.  Class 1 consists of claims for any cost or expense of administration pursuant to Sections 503, 506, and 507 of the Bankruptcy Code.

The following professionals will be paid subject to Court approval:

| | | |
|---|---|---|
| Stubbs & Perdue, P.A. | Attorney for the Debtor | To be determined by the Court |
| Northen Blue, LLP | Attorney for the Committee | To be determined by the Court |
| Neal, Bradshear & Taylor | Financial Advisor for Committee | To be determined by the Court |

(2)    <u>Impairment</u>.  This class will be impaired.

(3)    <u>Treatment</u>.    Administrative costs and expenses approved by the Court shall receive pro rata distributions from the net sales proceeds, in accordance with the distribution schedule described in Section V of the Plan.  Distributions shall be made only after fees and expenses are approved by the Court.  Distributions shall be made pro rata to claimants within this class on a quarterly basis.  In the event that a claimant has an application pending with the Court at the time distributions are to be made, the amount requested in such application shall be included in the total amount owed to such claimant for the purposes of calculating distributions.

**B.    Class 2 – Ad Valorem Taxes:**

(1)    <u>Classification</u>:   Class 2 consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  Ad valorem taxes for the calendar year 2008 and subsequent years are not yet past due.

(2)    <u>Impairment</u>.   This class will be unimpaired.

(3)    <u>Treatment</u>.    Ad valorem taxes on property of the Debtor's estate shall be paid from the net proceeds of sale, in accordance with the priorities of the Code.  Distributions to claims in this class shall be made from the closing proceeds.

**C.    Class 3 – Tax Claims:**

(1)     Classification.     Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes, excise taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service, the North Carolina Department of Revenue, South Carolina Department of Revenue, or the Employment Security Commission, plus interest as allowed by law. *The Debtor is unaware of any claims in this class.*

(2)     Impairment.     This class will be unimpaired.

(3)     Treatment.     The Debtor proposes the following treatment:

**Cost and expenses of administration,** if any, shall be paid in cash and in full including accruals to date of payment within 30 days from the Effective Date of the Plan.

**Secured claims**, if any, shall be paid the full amount of their allowed claims from sale proceeds, in accordance with the priorities of the Bankruptcy Code.

**Unsecured priority tax claims** if any, described in Section 507(a)(8) of the Bankruptcy Code shall be paid the full amount of their allowed claims from the net proceeds of sale in accordance with Section V of the Plan, but in any event in cash (i) of a total value, as of the Effective Date, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the Petition Date; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan.

**Unsecured general tax claims** will be treated in Class 10 herein.

**D.     Class 4—SunTrust Bank:**

(1)     Classification.  On November 3, 2005, the Debtor and SunTrust Bank entered into a Promissory Note and Construction Loan Agreement, whereby SunTrust Bank agreed to fund the improvements to the Aumond Glen subdivision in an amount not to exceed $9.024 million.  The Promissory Note was secured by a first priority deed of trust on all of the real property comprising the Aumond Glen subdivision, including the TIC Lots.  The Promissory Note accrued interest at a variable rate equal to the SunTrust Bank Prime Rate plus 0.25% per annum.  The Debtor estimates this claim at $5,623,588.00.

(2)     Impairment.     This class will be impaired.

(3)     Treatment.     This obligation shall be treated as follows:

a.     SunTrust Bank's claim shall be treated as a secured claim in an amount equal to (1) the balance outstanding on the Petition Date; plus (2) interest accruing at the rate of prime plus .25% from the Petition Date; plus (3) costs and expenses approved by the Court pursuant to Section 506(b); plus (4) all post-petition advances, if any; less (5) all post-petition payments.

b.      SunTrust Bank shall retain all of its liens, with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full, or as otherwise set forth herein.

c.      The Note shall continue to accrue interest at a rate equal to the contract rate until paid in full.  The Debtor shall make monthly interest only payments until such time as this claim is paid in full from the sales proceeds.

d.      The release fee for the sale of any lot sold by the Debtor shall equal 85% of the gross sales proceeds.  SunTrust Bank shall receive payments from the net proceeds of sale in the manner described in Section V of the Plan.

### E.      Class 5 – TIC Owners:

(1)      Classification:  Prior to the Petition Date, the Debtor entered into a Tenancy In Common Agreement ("Agreement") with a number of individuals and entities, each of whom owns a portion of the 78 TIC lots with the Debtor as tenants in common.  The Debtor holds an option to repurchase this interest from the TIC Owners.  The 78 lots owned by the Debtor and the TIC Owners are subject to SunTrust's deed of trust.  These lots remain under contract to Eastwood.  The TIC Owners are as follows:

Jon P. Brady
Harry C. Gimmer
John L. Sullivan, Jr.
Christopher Tull
David Carson
Richard Lee Bowers
Steven H. Gassaway
Watts Hamrick

(2)      Impairment.  This class will be impaired.

(3)      Treatment.  This class shall be treated as follows:

a.      The property owned by the TIC Owners shall be sold to Eastwood, or if the Eastwood contract is terminated, to another buyer.

b.      On or before the Effective Date, the TIC Owners shall deed their respective interests to the Debtor in exchange for a mortgage on the TIC lots with the best priority available.  The TIC Owners shall share their lien priority pari passu, based on their respective interests under the Agreement.

c.      As of the Effective Date, all obligations in this Class shall be treated as secured obligations of the Debtor up to the value of the collateral securing the claim, in an amount equal to (1) all outstanding principle and interest due on the Petition Date; plus (2) interest accruing at the non-default rate of interest if allowed pursuant to Section 506(b); plus (3) costs and expenses approved by the Court pursuant to Section 506(b); less (4) any post-

9

petition payments; provided however, distributions shall first be applied in payment of outstanding principle until paid in full, then to payment of outstanding costs or expenses allowed by the Court, and last to outstanding accrued interest.

   d.  Members of this Class shall retain the liens they are granted pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the claims are paid in full, or as otherwise set forth herein; provided however, such liens and the distributions to holders of allowed claims in this Class shall be subordinate to the payment of allowed claims in the following Classes and to the extent and in the priority set forth below:

     (a)  Distributions to the holders of allowed claims in Classes 1, 2, 3, and 4.

     (b)  Distributions to the holders of allowed claims in Classes 7 and 8, but only to the extent such claims are allowed as Secured Claims.

     (c)  Distributions in satisfaction of any True Up Payments owed to any Debtor Affiliates.

     (d)  Distributions to the holders of allowed claims in Class 10, in an aggregate amount up to but not exceeding $75,000 in the aggregate.

   e.  This Class will receive the net sales proceeds remaining after payment of (i) the allowed claims in Classes 1, 2, 3, and 4; (ii) allowed claims in Classes 7 and 8, but only to the extent such claims are allowed as Secured Claims; (iii) the True Up Payments due to any Debtor Affiliate; and (iv) allowed claims in Class 10, in an aggregate amount up to but not exceeding $75,000 in the aggregate as specified in the Plan.  The Committee Disbursing Agent shall make all distributions to this Class as set forth in Section V of the Plan.

### F. **Class 6—Eastwood Construction Co., Inc. ("Eastwood"):**

   (1)  <u>Classification</u>:  Prior to filing its petition, the Debtor entered into a Contract and Option to Purchase Real Estate with Eastwood (the "Contract").  Pursuant to the Contract, the Debtor agreed to sell completed lots to Eastwood and Eastwood agreed to purchase said completed lots according to a specific schedule that provided for a set number of lot purchases each quarter. Eastwood provided the Debtor with a cash deposit totaling $500,000.00 and posted a letter of credit of $500,000.00.  Pursuant to the terms of the Contract, if Eastwood defaults on the contract by failing to purchase lots, such default not being cured in the manner outlined in the contract, Eastwood shall forfeit its deposit and its letter of credit.  In the event the Debtor defaults on the contract, such default not being cured in the manner outlined in the contract, as modified by the Code, Eastwood is entitled to a return of its deposit and its letters of credit will be released.

   (2)  <u>Impairment</u>.  This class will be impaired.

   (3)  <u>Treatment</u>.  The Debtor has filed a motion to assume its contract with Eastwood, subject to certain modifications agreed to by the Debtor.  This motion is currently pending before the Court.

In the event the Debtor is allow to assume its contract with Eastwood, Eastwood's claim shall be satisfied in the manner outlined in the Contract, as modified, with a portion of its deposit credited against the purchase price as outlined in the Contracts until its claims are satisfied in full. Should Eastwood elect not to purchase lots after the assumption of the Contracts or otherwise be in default of the Contracts, Eastwood's deposits shall be forfeited and the Debtor shall be entitled to draw upon the letters of credit.  In such event, all claims of Eastwood shall be deemed satisfied in full.

In the event the Debtor's motion to assume the Contracts is denied, the claims of Eastwood shall be treated in Class 10 herein.  The Debtor shall not be required to release Eastwood's letter of credit until such time as a final order has been entered as to whether or not the Debtor was in default under the terms of the Contract.

G.    **Class 7 – Hoopaugh Grading:**

(1)    Classification:  The Debtor and Hoopaugh Grading entered into a contract whereby Hoopaugh Grading was to act as the general contractor for the Debtor at the Aumond Glen subdivision.  On the Petition Date, the Debtor owed Hoopaugh Grading the sum of $88,873.42, representing the outstanding amounts owed to Hoopaugh Grading on its contract.  As of the filing of the Plan, Hoopaugh Grading has not filed a lien against the Debtor's real property.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.    This obligation shall be treated as follows:

a.    In the event Hoopaugh Grading perfects and enforces a mechanic's lien against the Debtor's real property in accordance with the procedure outlined in Section IV of the Plan, this claim shall be treated as a secured obligation of the Debtor up to the value of the collateral securing the claim, in an amount equal to (1) all outstanding principle and interest due on the Petition Date; plus (2) costs and expenses approved by the Court pursuant to Section 506(b); less (3) any post-petition payments. Payments shall be made to this Class in accordance with the priorities of the Bankruptcy Code and Section V of the Plan.  Any deficiency will be treated in Class 10 herein.

b.    In the event Hoopaugh Grading does not perfect and enforce its lien in accordance with the procedure outlined in Section IV of the Plan, this claim will be treated in Class 10 herein.

H.    **Class 8—Southern Pools & Spas ("Southern Pools"):**

(1)    Classification:  This class consists of the claim of Southern Pools arising out of its contract with the Debtor to provide certain amenities at the Aumond Glen subdivision.  On the Petition Date, Southern Pools was owed $231,500.00 by the Debtor.  Southern Pools has filed a claim of lien for the unpaid amounts.

(2)    Impairment.  This class will be impaired.

(3)   <u>Treatment</u>.     The Debtor hereby assumes its executory contract with Southern Pools.  The Debtor will satisfy the arrearages owed to Southern Pools as described in Section V of the Plan.  Any deficiency will be treated in Class 10 herein.

**I.    <u>Class 9 —Landcraft Management, LLC ("Landcraft"):</u>**

(1)   <u>Classification</u>:  The Debtor has two potential claims with Landcraft, more particularly described as follows:

a.     <u>Management Contract</u>.  Prior to filing its petition, Landcraft acted as the Debtor's manager pursuant to certain provisions in the Debtor's operating agreement, and had been responsible for general real estate development services, management of the Debtor's operations and advice in connection with the negotiation and consummation of agreements related to the Debtor's business, establishing policies and procedures.  Landcraft was compensated for its services through the payment of a management fee equal to its allocated costs.

b.     <u>True Up Payment</u>.  Prior to the Petition Date, the Debtor and one or more of the Debtor Affiliates advanced or received funds through Landcraft.

(2)   <u>Impairment</u>.  This class will be impaired.

(3)   <u>Treatment</u>.     The Debtor will treat the claims of Landcraft as follows:

a.     <u>Management Contract</u>.  Pursuant to Section 365, the Debtor hereby rejects its contract with Landcraft.  Any claim arising from such rejection of the management contract shall be treated in Class 10 herein.  This shall not be construed or deemed to affect in any way the right of the Debtor and/or the Committee to recover the True Up Payments.

b.     <u>True Up Payments</u>.  The Committee shall determine and seek approval by the Bankruptcy Court, after notice and hearing, of the amount of any True Up Payments due to or from the Debtor and any Debtor Affiliate.  The True Up Payments shall be recovered, to the extent possible, before any payment to Noteholders or TIC Owners in order to reflect each entity's benefit received or burden imposed as a result of such pre-petition transfers.

**J.    <u>Class 10 —General Unsecured Creditors:</u>**

(1)   <u>Classification</u>.  This class consists of all allowed, undisputed, non-contingent unsecured claims listed on the Debtor's petition or otherwise approved by the Court.

(2)   <u>Impairment</u>.   This class will be impaired.

(3)   <u>Treatment</u>.     The approximate total of general unsecured claims based on claims filed or scheduled as of the date of the filing of this Disclosure Statement and known deficiency claims is $129,957.78.  The deadline for filing claims is November 4, 2008.  The allowed Claims in

this Class, as determined by the Court as of the Petition Date (without post-petition interest, attorneys' fees or costs) shall be paid from net sale proceeds (i) otherwise due to the Class 5 claims of the Investors up to the aggregate amount of $75,000, and (ii) to the extent available from net sale proceeds after payment in full of all allowed Class 5 claims, the balance necessary to satisfy all allowed claims in this Class;  provided however, allowed Claims of Landcraft shall be subordinate to the payment of all other Allowed Claims in this Class.

K.    **Class 11 – Equity Security Holders:**

(1)    Classification.  This class consists of the members of the Debtor, the membership interests of the Debtor are owned as follows:

| | |
|---|---|
| J. Franklin Martin | 33.34% |
| Scott A. Stover | 33.33% |
| Matthew A. McDonald | 33.33% |

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  The Debtor will liquidate its assets as set forth above.  All net proceeds of sale remaining after satisfying all allowed Claims and any True Up Payments due to Debtor Affiliates, in full, will be distributed to equity security holders in accordance with the percentages set forth above.  This class will receive nothing from the Debtor until and unless all senior classes are paid in full.  Following the liquidation of the Debtor's assets and the distribution of the proceeds, all membership interests in the Debtor will be extinguished.

## IV.  PERFECTION AND ENFORCEMENT OF MECHANIC'S LIENS

Not withstanding anything to the contrary under state law or any deadline for the filing of claims, any creditor with rights to file a mechanic's lien pursuant to the South Carolina Code of Laws must follow the procedure outlined in this section to have a valid and enforceable lien against the Debtor's property.

Any party with the right to file a mechanic's lien to perfect and enforce a lien which was not perfected and enforced in accordance with applicable non-bankruptcy law prior to filing must do the following to perfect and enforce such lien:

a.    File a claim of lien with the clerk of court for the appropriate county, in accordance with the requirements of the South Carolina Code of Laws, by the earlier of (i) the time period required by the South Carolina Code of Laws; or (ii) by November 4, 2008; and

b.    File a proof of claim with the Bankruptcy Court by the earlier of (i) the date required by the South Carolina Code of Laws to enforce such lien; or (ii) November 4, 2008.

The filing of lis pendens shall not be required in order to perfect or enforce any mechanic's liens.

## V.  MEANS OF EXECUTION AND DISTRIBUTION OF SALES PROCEEDS

A.  <u>Sale Free and Clear of Liens</u>.  The Debtor's inventory consists of lots located in the Aumond Glen subdivision in Lancaster, South Carolina.  On August 1, 2008, the Court entered an Order Approving Emergency Motion to Sell Property Free and Clear of Liens and Other Interests with Liens to Attach to the Proceeds Pursuant to Section 363(f) (the "Free and Clear Order").  The Free and Clear Order permitted sales free and clear of liens as long as the purchaser for such lots was Eastwood.

All property sold under the Debtor's Plan will be sold free and clear of liens, regardless of who is the final purchaser for such lots.  In order to expedite the sale process, provide clear title to the lots sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to the purchasers of lots, simultaneous with the entry of the Order Confirming Plan, the Court will enter a new free and clear order, substantially similar to the Order attached to the Plan as Exhibit "A" which shall remove any restrictions on the sale of property free and clear of liens contained in the earlier Free and Clear Order. All property sold by the Debtor shall be sold pursuant to new free and clear order to be entered.  No further motions related to the sales of property shall be required; provide however, the Reorganized Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the lot purchasers.

B.  <u>Distribution of Sales Proceeds</u>.  Upon the sale of any of the Debtor's property, the liens secured by such property shall attach to the net proceeds of sale.  The costs of sale, including property taxes, closing costs, and costs allowed by Section 506(c), if any, shall be paid directly from the closing proceeds.  Thereafter, sales proceeds shall be distributed as follows, until all sales proceeds are exhausted:

1.  First, 85% of the gross sales proceeds shall be paid to SunTrust Bank until its claim is paid in full as described in Class 4.  This payment shall be reflected on any HUD settlement statement, and shall be paid by the closing attorney directly from the sales proceeds.

2.  Second, the Debtor shall pay all amounts due for such quarter, not to exceed the budgeted amount shown on Exhibit "C" (except as otherwise provided herein) for the Development Outflows as shown on Exhibit C." In the case of funds available for the Legal Fees and Miscellaneous Contingency line items in any given quarter, such amounts will be escrowed and rolled forward if not fully paid to satisfy claims and amounts payable in such quarter, and such funds may be used in subsequent quarters to pay any amounts owed by the Debtor in excess of the amounts set forth on Exhibit "C."  Funds to be distributed pursuant to this paragraph shall be paid directly to the Committee Disbursing Agent, which shall be responsible for making the payments in accordance with this paragraph and Exhibit "C."

3.  Third, to the Committee Disbursing Agent for payment of the allowed secured claims in Class 7 (Hoopaugh Grading) and Class 8 (Southern Pools), until such claims are paid in full.

4.  Last, all remaining proceeds shall be paid to the Committee Disbursing Agent for distribution to the holders of allowed claims in Classes 5, 9, 10 and 11, in accordance

with the terms of the Plan.  This payment shall be reflected on any HUD settlement statement, and shall be paid by the closing attorney directly from the sales proceeds until such time as all allowed assets have been liquidated.

C.    Disbursements by Committee Disbursing Agent.  All disbursements made by the Committee Disbursing Agent shall be considered made when received by the Committee Disbursing Agent.  The Committee Disbursing Agent shall then make disbursements to holders of claims within each Class pro rata, based on their respective claims and the terms of the Agreement as soon as practical after receipt of such payment, but in no event more than 15 days after receipt of such payment.  All payments received shall be applied against principal unless and until it is determined that the value of the collateral securing such claims will be sufficient allow for a recovery of interest. All costs and expenses incurred by the Committee Disbursing Agent in making such distributions shall be paid prior to any disbursements being made.

D.    Delivery of Distributions in General.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.  Distributions to Noteholders will be made by the Committee Disbursing Agent in the manner he elects.

E.     De Minimis Distributions.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim.  Instead, the Committee Disbursing Agent shall have the option of retaining such funds in escrow to be distributed at the time of the final distribution in accordance with the Plan. In any event, no distribution in an amount less than $5.00 shall be made to any creditor, and such de minimus distributions shall be treated in the same manner as Unclaimed Distributions.

F.    Timing of Distributions.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

G.    Unclaimed Distributions.  If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Committee Disbursing Agent shall not attempt to make any further distribution of such holder of the claim.  Undistributed property shall be retained by the Committee Disbursing Agent for distribution in accordance with the Plan.

H.    Reserve for Disputed Claims.  On and after the Effective Date, the Debtor or the Committee Disbursing Agent, as applicable, will reserve distributions for the holders of Disputed Claims in a segregated account (the "Disputed Claims Reserve") for the benefit of the holders of the Disputed Claims entitled thereto under the Plan.  Except to the extent that the Court shall have estimated under Section 502(c) of the Code or otherwise determined that a good and sufficient reserve for Disputed Claims is less than the full amount thereof, there will be deposited into the Disputed Claims Reserve an amount of cash which would have been disbursed on account of all Disputed Claims if all Disputed Claims were allowed in the full amount claimed by the holders thereof.  At such time as a Disputed Claim becomes an Allowed Claim, the distribution that would

have been disbursed had the Disputed Claim been an Allowed Claim on the Effective Date shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim within thirty days.

I.    Deadlines for Post Confirmation Actions

      1.    Administrative Claims, Fee Applications, and Claim Objections. All objections to claims, fee applications, and administrative claims , will be filed with the Court within 60 days of the Effective Date, unless otherwise extended by the Court.

      2.    Deficiency Claims. Any secured creditor asserting a deficiency claim shall file a proof of claim within 30 days after the determination that such deficiency claim exists or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full. In the event the Debtor obtains its Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period. In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the amount of such claim and the basis for such deficiency claim.

      3.    Adversary Proceedings. All adversary proceedings shall be filed in the manner described in Section X of the Plan.

## VI.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, except to the extent otherwise expressly provided herein, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement. Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply to such causes of action upon or after confirmation of the Plan. Furthermore, except to the extent expressly provided nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims

provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## VIII.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the holder of such note(s), or by Order entered upon appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## IX.  REJECTION OF EXECUTORY CONTRACTS AND LEASES

Each pre-petition executory contract or unexpired lease which was not rejected, assumed, or assigned during the Debtor's Chapter 11 case shall be deemed rejected by the Debtor as of the Effective Date unless otherwise treated herein.  Any person with a Claim arising from such rejection shall be deemed to hold a Class 10 claim and shall file a proof of claim within thirty (30) days of the Effective Date, unless required to file such claim earlier, or be forever barred from asserting any Claim relating to such rejection.

## X.  POST CONFIRMATION ACTIONS AND RELEASES

A.    Adversary Proceedings. All adversary proceedings, whether brought by or on behalf of the Debtor, the Committee, or a holder of a Class 5 claim against the Debtor, the Debtor Affiliates, the Debtor's members, the Landcraft Principals, the Landcraft Affiliates or Landcraft, shall be filed in accordance with the following procedure:

1.    The deadline for filing any such actions shall be 270 days from the Effective Date, unless otherwise extended by the Court.

2.    The Committee shall retain the exclusive right during such period and thereafter while any such adversary proceeding is pending, on behalf of any holder of a Class 5 claim, to bring or pursue any action against the Debtor, the Debtor Affiliates, the Debtor's members, the Landcraft Principals, the Landcraft Affiliates or Landcraft related to the repayment of the Class 5 claims. Any such proceeding will be brought in the Bankruptcy Court.

B.    Injunction Against Separate Actions by Class 5 Claimants. As of the Confirmation Date, all persons that have held, currently hold, or may hold a claim against the Debtor, the Debtor Affiliates, the Debtor's members, the Landcraft Affiliates, the Landcraft Members or Landcraft, arising out of or related to the Class 5 claims, are enjoined from taking any of the following actions on account of any such claims, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching,

collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order.

C.      Releases.  The Committee shall have the exclusive right to enter into compromises and settlements of any such adversary proceedings, after notice and hearing and upon approval by the Bankruptcy Court, including any releases of the Debtor, the Debtor Affiliates, the Debtor's members, the Landcraft Principals, the Landcraft Affiliates or Landcraft, including releases which may be in complete settlement, satisfaction, cancellation, discharge, and release of all Claims or interests of any nature whatsoever against such parties. Any releases, once approved by the Committee and the Bankruptcy Court, and made on behalf of Class 5 claimants shall be effective as to each Claim or interest, regardless of whether a proof of claim was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

# XI.    **EXCULPATION**

A.      Debtor and its Agents.  Neither the Debtor, nor any of its members, employees, attorneys, accountants, managers, consultants, or agents, who are acting on behalf of, overseeing, or monitoring any activities of the Debtor, shall have or incur any liability to any person for any act or omission in connection with or arising out of their formulation, preparation, dissemination, implementation, or administration of this Plan or the property to be distributed under this Plan, except if such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under this Plan and shall be fully protected in acting or in refraining from acting in accordance with such advice; provided however, that nothing contained herein shall relieve the Debtor and the Committee Disbursing Agent from its duties and responsibilities to make the payments required under this Plan.

Neither the Debtor, nor any of its members, employees, attorneys, accountants, managers, consultants, or agents, who are acting on behalf of, overseeing, or monitoring any activities of the Debtor, shall have or incur any liability to any person for any act or omission undertaken by the Committee Disbursing Agent in connection with or arising out of their administration of this Plan or the property to be distributed under this Plan.

In the event of a change in the Debtor's management, such that the current members of the Debtor and/or Landcraft Communities, LLC, are no longer acting on behalf of the Debtor, neither the Debtor, nor any of its members, employees, attorneys, accountants, managers, consultants, or agents, who are acting on behalf of, overseeing, or monitoring any activities of the Debtor, shall have or incur any liability to any person for any act or omission undertaken by any new management or manager of the Debtor.

B.      Committee Disbursing Agent.  Neither the Committee Disbursing Agent, nor any of its employees, attorneys, accountants, managers, consultants, or agents, who are acting on behalf of, overseeing, or monitoring any activities of the Committee Disbursing Agent, shall have or incur any liability to any person for any act or omission in connection with or arising out of their

administration of this Plan or the property to be distributed under this Plan, except if such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under this Plan and shall be fully protected in acting or in refraining from acting in accordance with such advice; provided however, that nothing contained herein shall relieve the Debtor and the Committee Disbursing Agent from its duties and responsibilities to make the payments required under this Plan.

C.      Committee Members and Professionals Employed by Committee.  Neither the Committee Members, nor any of their employees, attorneys, accountants, managers, consultants, or agents, who are acting on behalf of or overseeing, any activities of the Committee, shall have or incur any liability to any person for any act or omission in connection with or arising out of their administration of this Plan or the property to be distributed under this Plan, except if such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under this Plan and shall be fully protected in acting or in refraining from acting in accordance with such advice; provided however, that nothing contained herein shall relieve the Debtor and the Committee Disbursing Agent from its duties and responsibilities to make the payments required under this Plan.

## XII.  EFFECT OF CONFIRMATION

A.      Vesting of Property.  Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Reorganized Debtor.

B.      Injunction.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims the Debtor or the Committee may have against any party in interest.

## XIII.  ACCEPTANCE OR REJECTION OF PLAN;
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.      Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.      Acceptance by a Class of Creditors.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have

accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

     C.    <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

     (1)    Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated, or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

     (2)    Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

     (3)    Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

     (4)    Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

     D.    <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

     E.    <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

     F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to any  impaired class not voting to accept the Plan.  In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section XII herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy

Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## XIV.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XV.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.      to determine any and all objections to the allowance of claims and/or interests;

2.      to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.      to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.      to determine all controversies and disputes arising under or in connection with the Plan;

5.      to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date and all Bankruptcy Causes of Action filed with the period permitted by Section 546 or other applicable provisions of the Bankruptcy Code;

6.      to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.      to determine such other matters and for such other purposes as may be provided for in the confirmation order;

8.      to determine all disputes regarding property of the estate;

9.      to establish and adjust procedures for the orderly administration of the estate;

10. to determine matters that are subject to proceedings duly removed to the Bankruptcy Court;

11. to replace the Debtor-in-Possession with a Trustee for good cause shown;

12. To resolve any disputes concerning the Settlement Order or any other Order entered during the pendency of this case;

13. to enter a Final Order closing the Chapter 11 case;

14. to determine any tax liability pursuant to Section 505 of the Code;

15. to resolve any dispute with Eastwood or Keystone with respect to any contracts to purchase assets of the Debtor, any letters of credit posted by Eastwood or Keystone in favor of the Debtor or any other party, or any claims of Eastwood or Keystone against the Debtor;

16. to determine such other matters, and for such other purposes, as may be provided in the Order Confirming Plan or as may be authorized under any provisions of the Code;

17. to hear all matters and Adversary Proceedings filed in accordance with Section X of this Plan; and

18. to adjudicate all core proceedings under the Code, any proceedings arising under the Code, or arising under or related to the Chapter 11 case including but not limited to Bankruptcy Causes of Action.


## XVI.  MISCELLANEOUS PROVISIONS

A. <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B. <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C. <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D. <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E. <u>Liens</u>.  All liens remaining in favor of any creditor in this action against the real

property conveyed <u>prior to the filing of the petition</u> shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

      F.     <u>Continuation of Committee</u>.  Notwithstanding confirmation and consummation of the Plan, the Committee shall continue in existence until such time as the Plan is fully consummated in all respects. Notwithstanding the confirmation and substantial consummation of the Plan:

      1.     The Committee, on behalf of the Debtor, shall retain the right and standing to assert and shall have the sole and exclusive right to commence, pursue, settle, compromise, abandon, waive, or release any claim or cause of action which may exist on behalf of the Debtor (including specifically the Bankruptcy Causes of Action) which accrued and were asserted or capable of assertion by the Debtor as of the Petition Date.

      2.     The Committee shall retain the sole and exclusive right to appoint the manager of the Debtor, a limited liability company, and to appoint the management agent (which may be the same as or a different entity from the manager) of the Debtor.

      3.     The Committee shall determine and seek approval by the Bankruptcy Court, after notice and hearing, of the amount of the True Up Payments due to or from the Debtor and any Debtor Affiliate.

(this space intentionally left blank)

Respectfully submitted, this the 25th day of September, 2008.

s/Trawick H. Stubbs, Jr.
TRAWICK H. STUBBS, JR.
N.C. State Bar No.4221

s/Laurie B. Biggs
LAURIE B. BIGGS
N.C. State Bar No. 31845

STUBBS & PERDUE, P.A.
Attorneys for Debtor
P.O. Box 1654
New Bern, NC  28563
(252) 633-2700

AUMOND GLEN, LLC

By: s/Scott A. Stover
Scott A. Stover
Member Manager